## ANAKIN LOCK WORKS v. DILLON LOCK WORKS et al.

(Circuit Court of Appeals, Eighth Circuit. July 30, 1923.)

No. 6268.

1. **Patents ☜174, 240—Improvement patents limited to particular mechanism described; "infringement."**

The claims of a patent involving mere improvements, in view of the prior art, are to be narrowly construed and limited to the particular mechanism described, and a device which accomplishes the same result by means of different mechanism is not an "infringement."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

2. **Patents ☜235—Device, to infringe, must embody patentee's mode of operation.**

To constitute an infringement, defendant's device must be such as to substantially embody the patentee's mode of operation, and thereby to obtain the same kind of result in substantially the same kind of way.

3. **Patents ☜235—To constitute infringement, principle of operation must be the same. .**

Where there is a substantial difference in the principle of two devices, one will not be held an infringement of the other.

4. **Patents ☜328—1,021,651, for auxiliary safe lock, held valid, but not infringed.**

The Anakin & Shealy patent, No. 1,021,651, for an auxiliary locking mechanism for safes, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Northern District of Iowa; Scott, Judge.

Suit in equity by the Anakin Lock Works against the Dillon Lock Works and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 283 Fed. 629.

John C. Carpenter, of Chicago, Ill. (Munday, Clarke & Carpenter and Carl S. Lloyd, all of Chicago, Ill., on the brief), for appellant.

Before STONE, Circuit Judge, and MORRIS and FARIS, District Judges.

FARIS, District Judge. Appellant, who was plaintiff below, sued defendant for alleged infringement of its patent No. 1,021,651, issued on the 26th day of March, 1912, for an auxiliary locking mechanism for safes and similar receptacles. Being cast below, on the ground that there was no infringement, plaintiff appeals. The defenses urged below, in so far as we deem it necessary to consider them, were: (a) That the device of defendant did not infringe the patent of plaintiff, even if such patent be valid; (b) that plaintiff's patent is invalid, by reason of anticipation and for lack of invention; and (c) that plaintiff had no such title to the patent sued on, as warranted an action in its name.

The trial court found for plaintiff upon the issues of the validity of the patent and of plaintiff's title thereto, but found for defendant upon the issue of infringement, and dismissed plaintiff's bill. From

this judgment plaintiff appealed in the usual mode. The claim in its patent, which plaintiff contends was infringed by the device of defendant, is numbered 5, and reads thus:

"In combination, a safe comprising a door having a main locking mechanism therefor, inactive auxiliary locking means for said safe, arranged to co-operate with the door to lock the same closed, independently of the main locking mechanism, and a flexible connection secured to the auxiliary locking means at one end, and extending across the main locking mechanism in the path of abnormal movement thereof; said connection being permanently connected at its opposite end to the door aforesaid."

Safe doors, combination locks, or main locking mechanisms, and inactive auxiliary locking means, are all old in the art. The crucial question in the case is whether defendant has infringed as much of the above claim as provides as a part of the invention "a flexible connection, secured to the auxiliary locking means at one end, and extending across the main locking mechanism in the path of abnormal movement thereof."

Except for this phase of alleged similarity, the claim of plaintiff and the device of defendant urged as infringing are wholly dissimilar. The device of plaintiff, when the wire (i. e., flexible means) is pulled, or stressed, pulls down a lug, which lug is thus drawn from a recess in a single independent bolt, in which this lug normally engages, and a spring throws forward this independent bolt, which bolt, engaging in a prepared recess in the jamb of the safe door (at almost any desired point), again locks the door. This wire, or flexible means, is operated by increased stress created when the main locking mechanism is pushed from its normal position. It will be noted that the claim does not call for an attachment of the wire, or flexible means, to the main locking mechanism. It simply extends across such main locking mechanism, and functions necessarily, only when the abnormal movement of the latter is at an angle, approximately, of 90° to the stress put upon the wire, or flexible connection. If the main locking mechanism move abnormally, but parallel to the line of stress, the auxiliary locking mechanism will not function, except in the presence, also, of the rectangular movement. Ordinarily, in actual practice, such parallel movement could not occur.

The device of defendant, urged as infringing, locks the bolt plate or bolt bar of the original locking mechanism, which bolt plate or bolt bar, by means of eccentric cams, operates the bolts (in number usually from 6 to 24), which engage in recesses in the sides, top, and bottom of the door. There is a wire, or flexible means, which is attached in a stressed condition to the main locking mechanism by passing around a screw and, passing thence, is attached to some part of the safe door. When this wire is burnt, cut, or broken by any abnormal movement of the main locking mechanism, or when, by any movement or means, stress is removed from this wire, a lug is released, which, disengaging from a spring-operated block, allows the latter to swing on its axis and to be thrust against the bolt bar, thus preventing movement of the bolt bar, thereby relocking all of the 6 to 24 bolts, theretofore held locked by the main locking mechanism.

These differences inhere and are apparent: (a) In the device of

plaintiff, a pull, or jerk, or stress is necessary to operate this wire; in the device of defendant, the opposite is true, for the wire functions and the device is operated by a release of stress, either by burning, breaking, or otherwise severing the wire, or by a movement of the main locking mechanism in the direction of the theretofore inactive auxiliary locking means. So, if this wire is cut, broken, or burnt, or if the main locking mechanism is punched clear of the block in which it is fixed, so that it may be drawn by stress toward the auxiliary locking means, the latter immediately releases a block rotatably mounted on a bolt, which block, swinging around, engages the bolt bar or bolt plate and retains all of the original lock bolts in position. In short, plaintiff's device operates by pull, and defendant's by release of pull; one requires stress, the other release of stress, to operate it. (b) Plaintiff's device, as forecast already, shoots an independent bolt into a recess in the jamb of the safe door, at almost any desired position; while that of defendant swings on its axis and throws a block against the bolt bar or bolt plate thus locking all of the original bolts in the identical position in which the main locking mechanism held these bolts before such latter locking mechanism was destroyed. (c) The flexible means in plaintiff's device, merely passes over, or extends across the main locking mechanism, without being physically (except by bare contact) attached thereto; while the flexible means, or wire in defendant's device, is fixed to the main locking mechanism by a bolt or screw and passing thence is connected with the safe door by another screw. (d) The abnormal movement, rectangular to the line of stress, which causes the device of plaintiff to function, would not cause that of defendant to operate, at least, till such movement had proceeded far enough to push the combination free of the block in which it is positioned.

In passing, it would to a mere layman seem, that the defendant's device would function precisely the same, whether this wire were carried from its screw connection with the main locking mechanism to the safe door or not. Connecting the wire to the safe door merely increases the chances of severing it. But, be this as it may, we are dealing with the device as made, and not as it might be made.

[1] The patent of plaintiff is not a pioneer patent. Many devices of somewhat similar sort have long been known and used in the mechanical and commercial world. Some of these prior devices, indeed, and the patents protecting them, were offered on the trial as anticipatory of plaintiff's device and as making for the invalidity of its patent. In case of a pioneer patent the claims are to be given a broad and liberal construction (Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053); while in case of a patent involving mere improvements, in view of the prior art, the claims are to be narrowly construed and limited to the particular mechanism described, and any device which accomplishes the same result by means of different mechanism is not an infringement (Garneau v. Dozier, 102 U. S. 230, 26 L. Ed. 133; Kokomo Fence, etc., Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Duff v. Pump Co., 107 U. S. 636, 2 Sup. Ct. 487, 27 L. Ed. 517; Gordon v. Warder, 150 U. S. 47, 14 Sup. Ct. 32, 37 L. Ed. 992).

[2, 3] Infringement involves substantial identity, and to constitute an infringement the device made and used by defendant must be such as substantially to embody the patentee's mode of operation, and thereby to attain the same kind of result, in substantially the same kind of way, as was reached by the device of the plaintiff. Sewall v. Jones, 91 U. S. 171, 23 L. Ed. 275; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717. And where there is a substantial difference in the principle of two devices, one will not be held to be an infringement of the other. Werner v. King, 96 U. S. 218, 24 L. Ed. 613; Pope, etc., Co. v. Gormully, etc., Co., 144 U. S. 238, 12 Sup. Ct. 637, 36 L. Ed. 419; Grier v. Wilt, 120 U. S. 412, 7 Sup. Ct. 718, 30 L. Ed. 712; Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853. It is apparent, we think, that the salient differences, above pointed out, between the device of defendant and that disclosed by the patent of plaintiff, show such dissimilarity as to negative the notion of infringement.

It has been said, as already broadly stated above, that:

"In a patented combination, a device in one mechanism, to be the equivalent of a device in another, must perform the same function (Rowell v. Lindsay, 113 U. S. 97, 103, 104, 5 Sup. Ct. 507, 28 L. Ed. 906), and perform that function in substantially the same manner, as the thing of which it is alleged to be an equivalent" (American Can Co. v. Hickmott, etc., Co. (C. C.) 137 Fed. 88).

Standing alone, there certainly can be no invention in the mere stretching of a wire, or other flexible means, across the main locking mechanism. Almost as well could it be said that laying a wire upon a work bench constitutes invention. The decisive question is: What function does that wire perform when it is stretched across this main locking mechanism? As seen already, in plaintiff's device, the office of this wire is to function upon the application of increased stress, while in that of defendant a diametrically opposite office is performed by this wire; in that, it functions only upon the release, in some one of several ways, of such stress. Two of the unities, said in the case of American Can Co. v. Hickmott, etc., Co., supra, to be requisites in the infringement of a combination patent, to wit, identity of result and identity of operation, are not to be found in defendant's device, when compared with that of plaintiff.

[4] For these reasons, and in the light of these rules, in a patent of this sort, we are constrained to conclude that there was no infringement. Upon the two other points, namely, that the plaintiff's patent is valid, and that it had such property in the patent alleged to be infringed, as to warrant action in its own name, we are constrained to agree with the finding of the learned trial court.

It results, that the view taken by the trial court was correct, and the decree ought to be affirmed, and affirmance is accordingly ordered.