## ACME CARD SYSTEM CO. v. GLOBE-WERNICKE CO.

District Court, N. D. Illinois, E. D. January 5, 1928.

No. 4415.

1. **Patents ⬤⇒157(1)—Nonpioneer patent will be construed to cover only specific device and colorable imitations.**

Where patentee is not a pioneer, his patent will be construed to cover only his specific device and colorable imitations.

2. **Patents ⬤⇒26(1¼)—Combination of old elements to be patentable, must produce new and useful result, or old result in better way.**

A combination of old elements, to be patentable, must produce by their joint action a novel and useful result, or an old result in a more advantageous way.

3. **Patents ⬤⇒18—Want of invention cannot be predicated on a device which reaches a long-sought and unattained result, because of its simplicity.**

If a particular result was frequently sought and never attained, want of invention cannot be predicated of a device or process which first reached that result merely because the simplicity of the means appears to be such that many believe that they could readily have produced it, if they had tried.

4. **Patents ⬤⇒157(1)—"Resilient," as used in patent, is word of comparative meaning.**

"Resilient," as used in a patent, is a word of comparative meaning.

5. **Patents ⬤⇒328—1,327,936, for a card index, held valid and infringed.**

Anthony patent, No. 1,327,936, for a card index, *held* not anticipated, valid, and infringed.

In Equity. Suit by the Acme Card System Company against the Globe-Wernicke Company. Decree for complainant.

Frank L. Belknap, of Chicago, Ill., for plaintiff.

Cromwell, Greist & Warden, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Plaintiff, owner of Anthony patent, 1,327,936, for an improvement in card indexes, brought this suit against defendant, alleging infringement. Defendant asserts invalidity and lack of infringement. Plaintiff relies upon claims 2, 3, 12, 19, and 23.

Claim 2 is as follows:

"In a card index, the combination, with a holder having opposed guides, of a plurality of card carriers extending from one guide to the other, and slidably mounted therein, each carrier being formed of a length of resilient wire and a card detachably sustained on each carrier, each carrier being provided with means for holding it spaced from an adjacent carrier whereby the lower edge of each card projects below the card above."

Claim 3 is identical, except that it uses the words "a card removably hinged to each carrier," instead of "a card detachably sustained on each carrier."

Claim 12 is as follows:

"In a card system, a sheet, and a support therefor to which the sheet is detachably hinged, comprising a pair of spacers at the lateral edges of the sheet."

Claim 19 is similar to claims 2 and 3, except that the carrier is described as "being formed of resilient material." The card is there described as "detachably sustained by each carrier."

Claim 23 is for cards for a card index in combination with a frame, a series of supporting members held therein, each having a card engaging the supporting member and a spacing part for spacing the members a distance from the corresponding parts of the adjacent members, each one of which is individually removable from the frame without substantial movement lengthwise of the frame, and each one of which sustains a removable card, it being asserted that, when all of the cards are in place, marginal edges, substantially uniform in width, of all of the cards back of the uppermost cards will be exposed, and that when the intermediate card is missing from its supporting member the absence of such card will be visually indicated by the exposure of the additional

portion of the marginal edge of the next lowest card.

The patentee recognized the prior art in these words: "This invention relates to card indexes of that type which include a frame or holder having opposed guides and a plurality of cards interchangeably supported in said guides, to have an overlapping relation relative to each other; said card being pivotally sustained, so that, by swinging upwardly the card above any desired card, the subject-matter on said card will be exposed to view."

Patentee described his supporting means as, practically indestructible, and stated that his object was "further to improve card indexes" of the type mentioned. He preferably employed a construction which admitted of each card being removed from its carrier, and preferred to secure the spacing means between the adjacent carriers by bending each end of the carrier to form a head. The resiliency specified was desirable, so that the carrier might be bent outwardly at the center sufficiently to withdraw one end from the guides. He specified that each card is preferably removably sustained on its carrier, and that, while this quality of removement might be accomplished in various ways, he has shown it as accomplished by folding the card over the carrier.

[1, 2] The generic art in which this patent is included embraces that of temporary binding devices, visible indices, reference files, and visible reference equipment. It is in this last-mentioned—a specific—art, that Anthony delved. He was not a pioneer, and therefore his grant will be construed to cover only his specific form of device and colorable imitations thereof. Milwaukee Co. v. Brunswick-Balke, 126 F. 171 (C. C. A. 7th Circuit); Bone v. Marion County, 251 U. S. 134, 145, 40 S. Ct. 96, 64 L. Ed. 188; Anakin Lock Works v. Dillon Lock Works, 292 F. 45-48 (C. C. A. 8th Circuit); Gordon v. Warder, 150 U. S. 48, 14 S. Ct. 32, 37 L. Ed. 992; Jay v. Weinberg, 262 F. 973, 974 (C. C. A. 7th Circuit). In so far as his device is a combination of old elements, in order to be patentable, it must produce by the joint action of such elements a novel and useful result, or an old result in a more advantageous way. Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196.

There were other devices, made up of removable cards, such as those of Wakefield, 685,071, and Mapes British, 12,475, 12,476. Other patentees disclosed hinged cards which turned upon their axes, so that they would lie flat, with either side visible and ready for work. Many of these devices possessed the quality of overlapping, and some of them had cards which might be removed without taking out the carrier. Anthony, however, secured such result by a new spacing method. In Wakefield's device, in case of permanent removal of any closed file, the entire system would necessarily have to be rearranged to retain its efficient arrangement. Mapes could not remove the carrier without substantial movement lengthwise of the frame, did not use material which was resilient in the sense of that word as used by Anthony, or achieve the free movement of Anthony.

Richardson, 967,438, said by defendant's expert to be, with Crichton, 176,516, the nearest prior art approach to Anthony's device, apparently made a book with leaves, each of which bore a detachable sheet affixed thereto by a clamp. He did not disclose the essentials of a visible record or produce a marginal telltale. It is questionable whether the leaves could be removed. Furthermore, there is no evidence of use of his device. Crichton achieved no exposure of the margins. He made a loose-leaf newspaper binder, which could not function as a visible record. He taught the art nothing. His device was obvious. There is no evidence that it was ever used. Rand, 890,925, 1,025,997, 1,016,230, had a card which rotated upon its carrier, and was made of a short-lived material, to which the card was permanently affixed by glue. The carrier was easily bent and distorted, and necessarily of short life. When the card was removed, there was no telltale. It has been abandoned for another device.

So, while it appears that there was visible equipment in the prior art, none of it achieved substantial success, or resulted in the efficiency of Anthony's improvement. His claims and specifications set out a device whereby the cards lay flat, visibly exposed. They rotated easily and rapidly, because of the hinging upon a metal carrier. His card could be detached from the carrier and re-attached thereto with facility, thus leaving the telltale of benefit to the operator. The carriers of resilient material could be removed with facility; they were of simple, ingenious design, and are practically permanent and easily manipulated. While he preferred to use a resilient wire, he specified that any resilient metal might be used for the carrier, and he ingeniously secured his desired spacing by merely turning the ends about. He provided that his sheet could be hinged to the carrier by any method,

preferably by folding the card over the carrier, but left to the constructer the option of making the hinge in any obvious manner.

This plaintiff has done by a metal clip, which turns as a hinge upon the turned end of the carrier, which serves as a pintle. He made a structure which furnished accurate alinement, and great speed and efficiency in operation. This freedom of movement and correct spacing was most important as a practical matter, and the result is the efficient, commercially successful device of plaintiff. According to the testimony, in one office the accounts concerning 900,000 meters were formerly kept in loose-leaf ledgers on shelves. Eight boys were required to handle the ledgers and give information relating thereto. The plaintiff substituted its equipment, putting the records in 90 units, instead of 450 books, at a saving in cost of equipment, and reduced the number of boys from eight to two, with more .efficient operating results. Though most of the elements specified by the patentee were old, some of them, as indicated above, were new, and the combination of the old and new elements produced a novel, useful, and successful device, which amounted to invention.

[3] We well know that, if a particular result was frequently sought and never attained, want of invention cannot be predicated upon a device or process which first reached that result, merely because the simplicity of the means appears to be such that many believe they could have readily produced it, if they had tried to do so. And where a new organization of old elements produces a new mode of operation and a beneficial result, there may be a patentable invention, whether the result is new or is old. The authorities are numerous that, while it is true that it is not invention to substitute superior for inferior materials, in making one or more of the parts of a machine or manufacture, if the substitution of materials develops new uses of the article made, it may amount to invention. The same is true, whether the substitution produces a new mode of operation, or results in the first practical success in the art in which the substitution is made, or in increased efficiency, or any decided saving in cost or facility of operation.

Defendant insists that plaintiff's structure follows Rosenberger, 1,153,520, rather than Anthony. Whether this is true, and whether Rosenberger's patent is valid as against Anthony, are questions not here directly involved. The court has presented to it only the inquiries as to whether Anthony achieved invention, and whether defendant's structure follows his teachings without additional inventive features. Upon the first of these questions, the inquiry as to whether plaintiff's structure reads upon Anthony or upon Rosenberger arises incidentally, if we are to consider plaintiff's commercial success, in determining the validity of Anthony's contribution. From what has been said it is evident that everything in plaintiff's successful structure is taught by Anthony's patent.

Defendant's device admittedly includes many of the elements of Anthony's patent. It constructs a tray of metal backing, with grooves for carriers in the sides and removable metal carriers, each comprising in itself a spacer held firmly in the tray by its shape, so as not to be rotatable. The cards are detachable; they lie flat; they fold over hinge butts; their absence after the removal of the carrier leaves telltale spaces.· There is a difference in the hinging method, but the card is attached to the metal hinge butts, and rotates upon a wire attached to the carrier, and, if the method is not substantially identical with what Anthony had in mind, it plainly comes within his disclosure of an option to use any obvious hinging method.

[4] Some question arises as to whether the defendant uses the resilient material prescribed by Anthony. "Resilient" is a word of comparative meaning, and Anthony used it in the sense that the material must be of such degree of resiliency as to permit the direct withdrawal of the carrier without substantial lengthwise motion. The defendant insists that it intends and instructs its customers not thus to remove its carrier, but such removal can be accomplished with speed and ease. True, the material is less resilient than that of plaintiff; but it possesses some degree of resiliency, and the carriers are removable without serious distortion. Claim 12 does not contain the prescription of resiliency. Claims 2 and 3 prescribe a resilient wire. Claim 19 prescribes any resilient material. Whether a material is round or flat is immaterial, if the result is the same.

[5] Defendant and plaintiff claim, advertise, and achieve the same advantages. Though Anthony was not a pioneer, and delved in a crowded art, he produced a specific invention possessing novelty and utility, which taught his followers all that they need in order to make the successful devices of both plaintiff and defendant.

Plaintiff will have a decree finding the claims relied upon valid, and infringement thereof by defendant, and ordering an injunction and an accounting.