**IMPERIAL STONE CUTTERS, INC., a Corp., and Floyd W. Trindle, an Individual, Plaintiffs,**

**v.**

**Herman SCHWARTZ, Defendant.**

**No. 1861.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 30, 1966.

Dunlap & Laney, Oklahoma City, Okl., Hardin, Barton, Hardin & Jesson, Fort Smith, Ark., for plaintiffs.

Meyers & Peterson, Minneapolis, Minn., Shaw, Jones & Shaw, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

In this action commenced February 24, 1965, the plaintiffs seek to recover damages for the infringement of letters patent No. 2,762,359, and an injunction restraining the defendant from further infringement under 35 U.S.C.A., Secs. 281, 283. Plaintiff, Imperial Stone Cutters, Inc., is an Oklahoma corporation with its principal place of business in Oklahoma City, and plaintiff, Floyd W. Trindle, is a citizen of Oklahoma and a resident of Oklahoma City. The defendant, Herman Schwartz, is a citizen of the State of Arkansas, d/b/a the Arkansas Cherry Blend Stone Company at Paris, Arkansas.

The court has jurisdiction by virtue of 28 U.S.C.A., Sec. 1338(a).

Plaintiff, Imperial Stone Cutters, Inc., hereafter referred to as Imperial, is presently the exclusive licensee of patent No. 2,762,359, which was issued to Gerhard B. Entz September 11, 1956, and hereafter referred to as the Entz patent. The Entz patent was assigned by the original patentee to Southwest Industrial Products February 1, 1959, which is the corporate predecessor of Imperial. Imperial assigned the Entz patent January 1, 1965, to the individual plaintiff, Floyd W. Trindle. In a prior action in this court the Entz patent was considered, and claims 4, 5, 6, 7, 13 and 14 were held invalid.[1]

In their complaint plaintiffs Imperial and Trindle alleged that the defendant Schwartz within the last six years prior to the filing of the complaint and within the Western District of Arkansas infringed the Entz patent, of which they are the licensee and owner, respectively; that plaintiffs have regularly and continuously sold and marked patented goods with the proper notice in full compliance with the patent statutes; that plaintiff Trindle, as owner, has filed with the U. S. Patent Office a disclaimer of claims 4, 5, 6, 7, 13 and 14, which were held invalid in the prior litigation. Plaintiffs seek a permanent injunction restraining defendant, his clerks, agents, servants and employees and confederates from further infringing the Entz patent and for treble damages as well as reasonable attorneys' fees and costs.

The defendant in his answer of April 30, 1965, admits that the court has jurisdiction of the controversy, and that patent No. 2,762,359 was issued to Gerhard B. Entz, but denied that it was legally issued for lack of invention. The defendant generally denied the allegations of the complaint and asserted as affirmative defenses that the Entz patent is invalid because the claims are vague, indefinite, ambiguous; that the claims are invalid through want of novelty; that the patent was anticipated prior art in public use or on sale more than one year prior to the filing date of the application, and that the conditions of patentability as provided in 35 U.S.C.A., Sec. 103, nonobviousness over the prior art are not met. The answer also contains a list of patents recited as prior art and in addition asserts the defense of file wrapper estoppel, and concludes with a prayer that the complaint be dismissed, that judgment be entered in his favor, and that he be awarded costs, reasonable attorneys' fees and any other proper relief.

On October 12, 1965, the defendant filed his motion for summary judgment, in which he asserted that claims 10 and 11 were invalid because "the structure defined in said claims was the subject of prior use and sale in the United States more than one year prior to the date the application of the patent in the United States, and that accordingly, under the provisions of 35 U.S.C.A., Sec. 102(b), the right to a patent on said structure was lost." On October 28, 1965, the court denied the defendant's motion for summary judgment.

On January 27 and 28, 1966, the case was tried to the court without the intervention of a jury, at which time the parties introduced documentary and ore

---

1. See Southwest Industrial Products v. Ezee Stone Cutter Mfg. Co., James Willis, Individually, (W.D.Ark.1957) 157 F. Supp. 208, aff'd 8 Cir., 262 F.2d 183. A history of the development of the Entz patent appears in that opinion, and no useful purpose would be served by restating it here. Claims 10, 11 and 12 of the Entz patent were held valid and infringed by Ezee Stone Cutter Mfg. Co. and the individual defendants in the prior action. The defendants in that action and the machine infringing the Entz patent are not the same as are involved in the instant action. The device alleged by the defendant in this action to have been on sale or in public use more than one year prior to the application of the Entz patent was not before the court in the prior action, and the decision in that action as to the validity of claims 10, 11 and 12 is not res judicata nor conclusive of the issues presented here.

tenus evidence. The case was submitted and taken under advisement subject to the submission of briefs by the parties, which have now been received and considered. This opinion is filed as authorized by Rule 52(a), Fed.R.Civ.P., and contains the findings of fact and conclusions of law.

The defendant at the trial contended, and in his brief now contends, that the Entz patent is invalid by virtue of the anticipation of the device by a stone cutter manufactured by George Vesper more than a year prior to application date of the Entz patent. In view of the court's disposition of this defense, no useful purpose would be served by discussion of the other defenses raised in the answer but not relied upon at the trial.

At the trial the parties stipulated that the controversy between them was limited solely to claims 10 and 11 of the Entz patent. Claims 10 and 11 of the Entz patent provide:

"10. In a cutting jaw for a stone cutting machine, the combination of a plurality of chisels, each comprising a shank having a transverse cutting edge at one end and a gable-like projection extending from a side of the shank provided with a cutting edge in continuation with said first mentioned cutting edge, and means movably supporting said chisels in side-by-side relationship; with the cutting edges of the shanks and of the projections normally in the same line, but for movement axially independently one with respect to another whereby they may be independently moved to dispose their said cutting edges into intimate contact with the uneven surface of a stone, said means including spacers between said sides of adjacent chisels from which said projections extend.

"11. The cutting jaw as specified in claim 10 in which said chisels are arranged in pairs, the chisels of each pair disposed with the sides of their shanks, opposite to those from which said projections extend, in sliding contact one with another."

The two claims above quoted relate to the cutting jaw of a stone cutting machine having a plurality of chisels with a transverse cutting edge. The elements of patented claims 10 and 11 of the Entz stone cutting machine, as reflected in plaintiffs' Exhibit 18 and defendant's Exhibit 24, are:

(a) A plurality of chisels arranged in pairs;

(b) In a side-by-side relationship with the cutting edge in the same line;

(c) Independently moving so as to dispose their cutting edges in intimate contact with the uneven surface of a stone;

(d) Gable-like protrusions from the side of the shank to provide a continuous cutting edge;

(e) Including spacers between adjacent chisels from which the gable extends;

(f) The shanks of each pair sliding in contact opposite from the side from which the gables project.

The crucial elements of claims 10 and 11 which read upon the invention are the gable-like projections and the continuous cutting edge in intimate contact with the surface to be cut. A continuing difficulty throughout the development of the stone-cutting industry has been the problem created by an uneven cutting surface on stone that was to be cut. Stone cutters which had rigid cutting surfaces broke or cracked the stone and did not give a smooth clean cut. Cutting jaws which contain independently moving chisels make it mechanically possible to adjust the cutting mechanism to conform to the surface being cut. The Entz machine contains a plurality of chisels that independently move and may be set to conform to the cutting surface prior to the application of the force necessary to cut the stone. The gable-like projections are but an extension of the cutting edge as a protrusion from the shank. When the chisels are arranged in pairs there is a spacer between each pair, and the projection from the shank therefore extends out across the spacer between the

pairs and provides a continuous cutting edge.

The accused device as shown in plaintiffs' Exhibit 19 also contains pairs of chisels with gable-like projections separated by spacers which have a continuous transverse cutting edge that may be set in intimate contact with the surface to be cut. The shanks of the accused device have what the parties styled "buttons" or protrusions which act as spacers although attached to the chisel shanks. In addition there are spacers set between the pairs that are not affixed to the chisel shanks.

The plaintiffs contend that the accused machine of the defendant has the same structural elements as covered by claims 10 and 11 of the Entz patent. The court is convinced, after an examination of the exhibits, including the chisels of the accused device, that the accused device contains the structural elements as claimed in 10 and 11 of the Entz patent, performs the same function as the elements of the claims of the Entz patent, and accomplishes an identical result. Because of the result reached hereafter the court will not unduly extend this opinion by a detailed examination of the mechanical structure of the accused device as compared with the Entz patent. Suffice it to say that the court finds the accused machine has substantially the same structure which performs an identical function and accomplishes the identical result as the machine embraced by the Entz patent.

The defendant, in support of his claim of unpatentability which would invalidate claims 10 and 11 of the Entz patent, relies upon the stone cutting machines first manufactured by George A. Vesper of Cosa Mesa, California, more than one year prior to the date of application for the Entz patent. See, 35 U.S.C.A. § 102(b). Vesper and his associates began manufacturing stone cutting devices in the middle 1940's. The original stone cutting machines constructed and sold by Vesper were of the guillotine type. Vesper and his associates developed an equalizer type of stone cutter which had a plurality of teeth that independently moved, and thus were capable of intimate contact with the surface to be cut. The particular model of the Vesper stone cutter relied upon by the defendant was leased to the Jacobson-Evans Stone Company of Lyons, Colorado, September 1, 1952. The Jacobson-Evans Stone Company also obtained a franchise agreement for two Colorado counties under that September 1, 1952, agreement. Defendant's Exhibits 1, 2, 3, 4, 5, 6 and 7 and the testimony of the witnesses establish that Vesper machines Model Nos. 8019 and 8007 were leased to and used by Jacobson-Evans Stone Company in their stone cutting operations in September, October and November 1952. Because of a default by Jacobson-Evans in the agreement, the Vesper stone cutters were later sold to another party, but the subsequent transaction is immaterial to the issues in the instant controversy.

The Vesper stone cutter Model No. 8007 contains a plurality of chisels arranged in pairs in sliding contact with each other which move independently. The chisels may be aligned in intimate contact with the cutting surface, and contain gable-like projections resulting in a continuous transverse cutting surface. See defendant's Exhibits 17, 18, 19 and 22. Mr. Allen M. Staubly, an engineer and patent lawyer with the Honeywell Corporation, with six years' experience in the U. S. Patent Office, testified in detail with respect to the similarities between the Vesper stone cutter Model 8007 and that of the stone cutter constructed in accordance with the Entz patent. The chisels in the Vesper stone cutter were in intimate contact between the pairs at the cutting heads and along part of the shanks. The shanks between the pairs had protrusions which rubbed in contact and acted as spacers. Between the sets of pairs there were bar spacers. Above the bar spacer there was an overhang or gable extension of the chisel head which provided a continuous cutting edge. Bolts inserted between the chisels

also acted as spacers as well as the protrusions between the pairs of chisels which acted as spacers. As heretofore set out, claims 10 and 11 of the Entz patent require these essential structural elements: (1) plurality of chisels; (2) shanks with transverse cutting edge and gable-like projections; (3) a continuous cutting edge; (4) spacers over which the gables extend; and (5) arrangement of the chisels in pairs in sliding contact.

■ An invention under the patent laws of the United States is patentable unless it was in public use or on sale in this country more than one year prior to the date of the application of the patent. This requisite is contained in 35 U.S.C.A., Sec. 102(b), which states as follows:

"A person shall be entitled to a patent unless—

\* \* \* \* \* \*

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or \* \* \*"

■ This general principle of unpatentability is referred to as "anticipation." In 40 Am.Jur., Patents, Sec.. 26, at page 548, the following statement is found which describes the operation of that principle:

*What Constitutes Anticipation.—* That which, if later, infringes a patent, anticipates it if earlier. The fact that one operating under a process described in an earlier patent would infringe a later patent is enough to show the invalidity of the later patent.

"Anticipation is established where it appears that at the time of the invention in dispute there was in use a process or instrumentality which was the equivalent thereof, similar thereto, or of substantially the same character."

■ To the same effect the element of novelty is embodied in the anticipation principle, and the following statement in 40 Am.Jur., Patents, Sec. 25, at page 547, is clearly applicable:

*"Generally.—*The element of novelty is an essential requisite of the patentability of an invention or discovery. If a device or process has been known or used by others prior to its invention or discovery by the applicant, an application for a patent therefor should be denied by the Commissioner of Patents; and if the application has been granted, the court, in a judicial proceeding in which the validity of the patent is drawn in question, will not hesitate to hold it void and ineffective to confer legal rights. It is not material that the patentee had no actual knowledge of the anticipatory device."

See, United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (decided Feb. 21, 1966); Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (decided Feb. 21, 1966).

An examination of the exhibits, including the chisel teeth from a Model 8007 of the Vesper machine, establishes that the mechanical structure of the Vesper stone cutter is substantially the same as that of the Entz machine. The elements of the structures, i. e., continuous cutting surface, chisels arranged in pairs, spacers for alignment and to separate the pairs, and the ability to align the chisels in intimate contact with the cutting surface are substantially the same as claimed in the Entz machine and in the Vesper machine. Substantially the same, if not identical, functions are performed by the structural parts. A substantial, if not identical, result is accomplished by the operation of the two devices.

The Supreme Court in Knapp v. Morss, (1893) 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059, in discussing the effect of devices that have the same structural elements and perform the same functions and results, at page 228 of 150 U.S., at page 84 of 14 S.Ct. stated:

"There is another test as to the validity of the second claim. If the Balch, Everett, Wilson, or Ferris pat-

ents, or even the umbrella, were subsequent in date to that of the Hall patent, they would constitute an infringement thereof, for the rule is well established that 'that which infringes, if later, would anticipate, if earlier.' Peters v. Active Mfg. Co., 129 U.S. 530, 537, [9 S.Ct. 389, 32 L.Ed. 738]; Thatcher Heating Co. v. Burtis, 121 U.S. 286, 295, [7 S.Ct. 1034, 30 L.Ed. 942]; Grant v. Walter, 148 U.S. [547] 554, [13 S.Ct. 699, 37 L.Ed. 552]; Gordon v. Warder, ante, [150 U.S. 47, 14 S.Ct. 32, 37 L.Ed. 992]."

By virtue of the principle enunciated above, the establishment of identity of structure and result of the three devices establishes infringement of the accused device but for the anticipation by the earlier one. A thorough discussion and application of the principle that "that which infringes, if later, would anticipate if earler" appears in American Fruit Growers, Inc., v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801 (1930). Also, see Graham v. John Deere Co., supra. The court has heretofore stated that the Vesper machine was in operation in the Jacobson-Evans Stone Company in September 1952, and is thus more than one year prior to the application on November 9, 1954. The court is, therefore, of the opinion that the defendant has established the existence and use of a machine more than one year prior to the application date of the Entz patent that contains substantially the same structure, performs the same function, and accomplishes the same result as claimed in claims 10 and 11 of the Entz patent, and thus claims 10 and 11 of the Entz patent are invalid and not infringed.

In accordance with the above a judgment is being entered today holding that claims 10 and 11 of patent No. 2,762,359 are invalid and have not been infringed by the defendant, Herman Schwartz; dismissing the plaintiffs' complaint with prejudice; and adjudging that the parties shall pay their own costs and attorney's fees.